[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 6, 2011
JOHN LEY
CLERK

_____

No. 10-11599
Non-Argument Calendar

_____

D.C. Docket No. 2:08-cr-14003-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY WAYNE CARVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 6, 2011)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

This case arose when a grand jury issued a two-count superseding

indictment against Timothy Wayne Carver.  Count One alleged, in part, that Carver enticed and attempted to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  Count Two alleged that Carver committed the Count One offense while being required to register as a sex offender under Federal or other law, in violation of 18 U.S.C. § 2260A.  Carver pleaded guilty to Count One, and a jury subsequently convicted him of Count Two.[1]  Carver now appeals his conviction for Count Two.

## I.  Constitutionality

Carver first argues that the district court erred by denying his motion to dismiss Count Two of the indictment, challenging the constitutionality of § 2260A on four grounds.  Section 2260A imposes an enhanced penalty on defendants who commit certain enumerated offenses, including a violation of § 2242, and who were required by either federal or state law to register as sex offenders.  Carver argues that § 2260A: (1) is unconstitutionally vague; (2) impermissibly delegates legislative authority over federal sentences to state authorities; (3) violates his due process and equal protection rights; and (4) creates an unconstitutional "status offense."  We review *de novo* the constitutionality of statutes and questions of

---

[1]  Carver initially pleaded guilty to Count One and was convicted of Count Two during a bench trial.  On appeal, we affirmed Carver's conviction and sentence for Count One, but we reversed and remanded on Count Two because Carver had not waived his right to a jury trial.

statutory interpretation. *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir.), *cert. denied*, 131 S. Ct. 643 (2010).

## A. Vagueness

The "vagueness" challenge is derived from the Fifth Amendment's Due Process Clause. *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010). "It encompasses notions of fair warning such that people of common intellect may understand a statute's prohibitions and need not guess at its meaning." *Id.* A criminal statute violates due process when it does not "'provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'" or "'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480 (2000)). "There is a strong presumption that statutes passed by Congress are valid." *Id.*

Section 2260A provides:

> Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under section [2242, *et al.*] shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision.

Carver argues the phrase "being required by . . . other law to register as a sex offender" is unconstitutionally vague. But Carver failed to argue that § 2260A was unconstitutionally vague as applied to him. *See id.* ("Where, as in this case, a

3

vagueness challenge does not involve the First Amendment, the analysis must be as applied to the facts of the case.").

The unambiguous language of the statute provided Carver with clear notice that, during the time that Florida required him to register as a sex offender, he would be subject to enhanced penalties for additional sex crimes. A person of ordinary intelligence would understand that an offense is committed when (1) he commits a specified federal offense involving a minor while (2) being required to register as a sex offender by Federal or state law. Likewise, the statute provided clear guidelines to law enforcement. Accordingly, we do not find the statute impermissibly vague, and we reject Carver's vagueness challenge.

## B. Non-delegation

Pursuant to the non-delegation doctrine, "'Congress manifestly is not permitted to abdicate or to transfer to others the essential legislative functions with which it is constitutionally vested.'" *United States v. Ambert*, 561 F.3d 1202, 1213 (11th Cir. 2009) (alteration omitted) (quoting *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 421, 55 S. Ct. 241 (1935)). We find that Congress did not impermissibly delegate its authority to the states in enacting § 2260A. The statute, on its face, neither allows nor requires the states or other governmental bodies to take action, and it does not grant them any powers. It merely acknowledges that

4

jurisdictions outside the federal government have some authority to require persons to register as sex offenders. It then dictates that if a person is required to register by such a jurisdiction, he is then subject to enhanced punishment for a violation of specific federal crimes. Accordingly, § 2260A does not violate the non-delegation doctrine.

## C. Due Process and Equal Protection

The Fifth Amendment's Due Process Clause, as applied to the federal government, incorporates the Fourteenth Amendment's guarantees of equal protection. *Davis v. Passman*, 544 F.2d 865, 868 (5th Cir. 1977). "We review the constitutionality of statutes subjected to substantive due process challenge with a high degree of deference to Congress: 'where a statute does not discriminate on racial grounds or against a suspect class, Congress' judgment will be sustained in the absence of persuasive evidence that Congress had no reasonable basis for drawing the lines that it did.'" *United States v. Tremble*, 933 F.2d 925, 930 (11th Cir. 1991) (quoting *United States v. Holmes*, 838 F.2d 1175, 1177 (11th Cir. 1988)). As an initial matter, Carver does not allege that § 2260A discriminates based on race or against a suspect class, so the only question before us is "whether there is a rational basis supporting Congress' decision to incorporate varying state categorizations" of what it means to be a sex offender required to register. *See id.*

Here, Congress had a rational basis for enacting § 2260A, as it protects the public by imposing additional punishment on recidivist sex offenders. *See Ambert*, 561 F.3d at 1209 (holding that federal sex-offender registration requirements are "rationally related to Congress' legitimate goal in protecting the public from recidivist sex offenders"). Moreover, the enhancement depends on a bright-line categorization—whether a state or the federal government requires a person to register as a sex offender—thereby putting registrants on notice that if they are later convicted for an enumerated federal offense, then they will have enhanced penalties. *See id.* at 931. We therefore find that § 2260A does not violate Carver's due process and equal protection rights under the Fifth and Fourteenth Amendments.

### D. Status offense

Carver next argues that § 2260A violates the Fifth, Eighth, Thirteenth, and Fourteenth Amendments. He asserts that § 2260A unconstitutionally criminalizes his status as a sex offender by creating a category of citizens who are punished more severely than other citizens. While Carver alleges a violation of four constitutional amendments, he relies mainly on *Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417 (1962) to support his claim. In *Robinson*, the Supreme Court held that "a state statute violated the Eighth and Fourteenth Amendments'

prohibition against cruel and unusual punishment because . . ." it made "the 'status' of narcotic addiction a criminal offense." *Robinson*, 370 U.S. at 666–67.

Unlike the statute in *Robinson*, which criminalized a "status," § 2260A does not criminalize the status of being a sex offender. Like other recidivist statutes, § 2260A enhances the punishment for enumerated federal substantive offenses and does not apply to anyone who has not committed any such offenses. Accordingly, Carver's argument fails.

## II. Sufficiency of the Evidence

To convict Carver of Count Two—a violation of § 2260A—the Government had to prove that Carver, while "being required by Federal or other law to register as a sex offender, commit[ted] a felony offense involving a minor" under § 2422. Carver pleaded guilty to a violation of § 2422 and also registered as a "sexual offender" pursuant to Florida Statute § 943.0435. Carver argues, however, that he was not a sex offender within the meaning of § 943.0435 and that even if he was, his conviction cannot be sustained under § 2260A because: (1) Florida was estopped from enforcing the statute against him; (2) § 943.0435 violates the *ex post facto* clause; (3) Florida failed to follow the notification provisions of the Sex Offender and Registration Notification Act, 42 U.S.C. § 16901 ("SORNA"); and (4) the definition of "sexual offender" under § 943.0435 is not the same as that

7

under federal law, specifically SORNA.

We review *de novo* the sufficiency of the evidence, viewing "the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Martinez*, 83 F.3d 371, 374 (11th Cir. 1996). We also review *de novo* questions of statutory interpretation. *Phaknikone*, 605 F.3d at 1107. When a defendant fails to raise an issue in his motion for acquittal, we will reverse only if there is an error that is "plain, affects [the defendant's] substantial rights, and seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Snipes*, 611 F.3d 855, 867 n.7 (11th Cir. 2010).

## A.

The evidence was sufficient for a jury to reasonably conclude that Carver was required to register under Florida law. Section 943.0435 requires anyone who "[h]as been released on or after October 1, 1997, from the sanction imposed" for a conviction pursuant to Florida Statute § 800.04 to register as a sex offender. Carver stipulated that he was convicted of a violation of § 800.04. And § 943.0435 defines "sanction" to include parole and probation. Carver's contention that his sanctions post-1995 should be treated as penalties for his probation violations, and not for his § 800.04 sex offense, are without merit.

8

Accordingly, because Carver's § 800.04 sanctions terminated on August 24, 2000, Carver was subject to the statute's registration requirements.

Carver's estoppel argument is also meritless. As a matter of law, mere inaction, i.e., failing to enforce a statute, cannot give rise to an estoppel claim against a state. *See United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003). And § 943.0435 does not violate the *ex post facto* prohibition because it is nonpunitive. *See Smith v. Doe*, 538 U.S. 84, 105–06, 123 S. Ct. 1140 (2003) (upholding the Alaska Sex Offender Registration Act against an *ex post facto* challenge); *Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008) (holding that a Florida sex offender registration statute did not violate the *ex post facto* clause because it was "not punitive, but rather regulatory" in nature).

Carver's arguments concerning SORNA also lack merit. First, assuming SORNA's notification requirements apply to the states, SORNA requires notification "shortly before" the sex offender's release from custody or "immediately after the sentencing." § 16917(a). Carver had first registered prior to SORNA's enactment. Moreover, the federal definition of "sex offender" is irrelevant to Carver's liability under § 2260A, which applies to individuals who are required "by Federal or other law to register as a sex offender." The phrase "or other law" would be superfluous if the state registration laws, as argued by Carver,

had to conform to SORNA. And even if SORNA's definition of "sex offender" were relevant to Carver's liability under § 2260A, the elements of Carver's § 800.04 offense would not need to include physical contact to qualify him as a sex offender under the Act. *See United States v. Dodge*, 597 F.3d 1347, 1351–56 (11th Cir.) (en banc), *cert. denied*, 131 S. Ct. 457 (2010) (holding that a crime whose elements and whose underlying conduct do not involve physical contact qualify as a sex offense under SORNA).

Thus, the Government presented sufficient evidence that Carver was required to register under Florida law.

### B.

Carver next argues that the Government failed to prove the essential elements of the § 2260A offense. We disagree. First, the Government sufficiently proved that § 943.0435 required Carver to register as a sex offender. Contrary to Carver's argument, the Government was not required to prove the elements of Carver's § 800.04 sex offense in order to show that this conviction brought Carver within the requirements of § 943.0435. To qualify as a sex offender under § 943.0435, a person is only required, in relevant part, to have been convicted previously under § 800.04. *See* Fla. Stat. § 943.0435(1)(a). Thus, because Carver stipulated to his previous § 800.04 conviction, the Government sufficiently proved

this prong.

We also disagree with Carver's contention that the Government failed to prove that Carver was living in Florida and was not incarcerated at the time of the Count One offense. During trial, Carver stipulated that he pleaded guilty and was convicted of the Count One offense as set forth in the indictment. The indictment stated that Carver committed the Count One offense in December 2007 "in St. Lucie and Indian River Counties, in the Southern District of Florida, and elsewhere." The jury also knew that Carver last registered on November 21, 2007, and a Government exhibit showed that, as of that date, Carver's permanent address was in Florida, he had no other permanent address, he was not on probation or parole, and his next scheduled registration date was in May 2008. Accordingly, even assuming that § 943.0435 applies only to those who reside in Florida and are not incarcerated, the Government presented enough evidence for the jury to reasonably infer that Carver did reside in Florida and was not incarcerated during the commission of his Count One offense. *See United States v. Henry*, 920 F.2d 875, 877 (11th Cir. 1991) (noting that a jury may convict by drawing reasonable inferences from circumstantial evidence, even if the evidence does not "exclude every reasonable hypothesis of innocence").

Finally, Carver argues that the Government did not offer any evidence that

the Count One offense involved a minor, as required by § 2260A.  This argument has no merit—Carver expressly stipulated that he "was convicted via a plea agreement of committing a felony offense involving a minor."  In sum, the Government presented sufficient evidence at trial to sustain Carver's conviction.

### III.  Jury Instructions

We review for abuse of discretion a court's refusal to give a requested jury instruction, and will find an error only "'if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case.'"  *United States v. Svete*, 556 F.3d 1157, 1161 (11th Cir. 2009) (en banc), *cert. denied*, 130 S. Ct. 1881 (2010) (quoting another source).  We review *de novo* "whether a jury instruction mischaracterized the law or misled the jury to the prejudice of the defendant."  *Id.*  "[W]e will not reverse a conviction on the basis of a jury charge 'unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process.'"  *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (quoting *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993)).

Carver challenges the court's rulings regarding four jury instructions.  He first challenges the court's refusal to give an instruction: (1) "as to venue"; (2)

12

regarding "the use of the conjunctive ('and') in the allegations" of the superseding indictment; (3) as to all the elements of the Count Two offense, including the elements of the underlying sex offense in Count One; and (4) on how to evaluate the applicability of § 943.0435 to his § 800.04 conviction. He also argues the court's instruction on the meaning of the term "knowingly" was unnecessary and could have confused the jury.

Neither the court's refusal to give certain instructions, nor the instructions the court gave, was erroneous. First, the district court did not err by not instructing the jury as to the Count One elements. Carver stood trial only for Count Two and stipulated to his Count One conviction, so the jury did not have to independently verify that his conduct violated § 2422(b). Second, the district court committed no error regarding venue. The court instructed that an element of the § 2260A offense was the commission of the Count One offense as set forth in the superseding indictment. The indictment alleged that the Count One offense occurred in the Southern District of Florida. Because the § 2260A offense was predicated upon the Count One offense, the court adequately covered venue by referencing Count One.

Third, Carver's argument regarding the conjunctive "and" in the indictment lacks merit. Carver points to two occurrences where the indictment alleged the

13

elements in the conjunctive: (1) where it stated that the crime occurred "in the Southern District of Florida, *and* elsewhere," and where it stated, in Count One, that Carver enticed a minor "*and* attempted to do so." Regarding the location of the crime, the jury could not have convicted Carver by finding that the crime occurred "elsewhere," and therefore, the district court's omission in this respect was not erroneous. As to actual versus attempted enticement, the Government presented sufficient evidence both to establish venue and to show that Carver was, in fact, located in Florida when he committed the Count One crime. Accordingly, this omission did not prejudice Carver by misleading the jury.

We review Carver's remaining challenges for plain error because he failed to raise them in the district court. *Prather*, 205 F.3d at 1270. The court correctly laid out the elements of § 2260A, and then defined "knowingly." This was not an error—Count One, a violation of which was an element of Count Two, used the term "knowingly." Thus, the district court was within its discretion to define the term for the jury. And even assuming this was an error, it does not require reversal because the inclusion of this definition did not confuse or mislead the jury to think that to violate § 2260A, a person only has to *believe* that he is required to register as a sex offender. Indeed, the court explained the relevant element of § 2260A—that the defendant "was *required* by Federal or other law to register."

14

And finally, given the evidence at trial, the jury did not need to engage in a complicated statutory analysis to conclude that Carver qualified as a sex offender under § 943.0435. Accordingly, because there was no error, much less plain error, we affirm.

## IV. Witness Testimony

Carver argues that the district court improperly permitted Carver's probation officer, Richard Ambrum, to provide a legal opinion that Carver was required to register as a sex offender. According to Carver, Ambrum's testimony was improper lay witness testimony under Federal Rules of Evidence 701 and 702. Carver argues that the district court never corrected the error because it did not give a curative instruction.

We review all evidentiary questions for abuse of discretion. *United States v. Brown*, 415 F.3d 1257, 1264–65 (11th Cir. 2005). Under Rule 701, the testimony of a non-expert witness "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. We will not reverse because of an evidentiary ruling if the error was harmless. *United States v. Khanani*, 502 F.3d

15

1281, 1292 (11th Cir. 2007).

The district court did not err by admitting Ambrum's testimony. Carver stipulated that he registered at all times during Ambrum's supervision. Further, Ambrum's testimony was based at least in part on his perception, since he personally signed the registration responsibilities form with Carver. Ambrum never provided an opinion on whether the registration statute, as a matter of law, was properly applied to Carver. And on cross-examination, Ambrum admitted that he had no legal training and was not holding himself out as an expert in the construction or interpretation of Florida statutes. Carver's counsel argued that the registration requirement was incorrectly applied to Carver, and the court explained that it was the jury's responsibility to determine whether § 943.0435 required Carver to register as a sex offender. Moreover, even if Ambrum's testimony constituted an expert opinion, Carver cannot show it had a "substantial influence on the outcome of the case" as required for reversal, *Khanani*, 502 F.3d at 1292, because there was a sufficient evidentiary basis—outside of Ambrum's testimony—that Carver was required to register. Accordingly, reversal is not warranted on this issue.

## V. Prosecutorial Misconduct

Carver argues that, in its closing argument, the Government impermissibly

16

vouched for Carver's § 800.04 conviction, the Count One conviction, and Carver's residence and location at the time Carver committed the Count One offense. He also argues that the cumulative error doctrine requires reversal.

We review allegations of prosecutorial misconduct *de novo*, as they present a mixed question of law and fact. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).

> To establish prosecutorial misconduct, "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. When the record contains sufficient independent evidence of guilt, any error is harmless.

*Id.* (citations omitted). Moreover, if the district court gave a curative instruction, "we will reverse only if the evidence is so prejudicial as to be incurable by that measure." *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009), *cert. denied*, 131 S. Ct. 413 (2010). When individual errors do not warrant reversal, we will reverse if the cumulative effect of multiple errors deny the defendant a fair trial. *Id*. at 1258. In addressing cumulative error, we "examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Id.*

Having reviewed the record and the parties' arguments, we find that the

Government's remarks were neither improper nor prejudicial. The remarks were not "vouching," which refers to attempts "to bolster the credibility of a witness . . . ." *Id.* at 1256. None of the Government's arguments were related to the credibility of a witness, and most of the Government's comments were made in response to Carver's attorney's closing argument. For example, in closing argument, Carver's attorney argued that the Government failed to present expert witnesses and that Carver was never convicted of *assault* in 1990. In its rebuttal, the Government responded to these arguments, emphasizing that no expert witnesses were necessary and that the Florida registration statute did not require a conviction for assault—only a conviction for violating § 800.04.

Further, even assuming the Government's remarks improperly suggested that Carver's plea to Count One conclusively established his residence and location in Florida, the remarks did not result in substantial prejudicial impact given the evidence presented at trial and the court's curative instructions to the jury. Accordingly, the comments do not warrant reversal, and we likewise decline to reverse based on cumulative error.

## VI. Jury Selection

We review *de novo* challenges to the constitutionality of the jury selection process. *United States v. Grisham*, 63 F.3d 1074, 1077 (11th Cir. 1995). In order

to establish a prima facie violation of the fair-cross-section requirement, the defendant must show

> (1) that the group alleged to be excluded is a distinctive group in the community, (2) that representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community, and (3) that the underrepresentation is due to systemic exclusion of the group in the jury-selection process. . . . To examine the second element, we must compare the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group on the [qualified jury wheel ("QJW")]. If the absolute disparity between these two percentages is 10 percent or less, the second element is not satisfied.

*Id.* at 1078–79.

Carver argues that his jury selection violated the Sixth Amendment's fair-cross-section requirement because the percentage of African Americans on the jury venire was 2.5%. On appeal, Carver cites the 2009 Census data on the African American population in the five counties from which the jury was chosen (11.9%) and the percentage of African Americans within all the counties in the Southern District of Florida (19%). Carver fails, however, to present evidence on the percentage of African Americans that are eligible for jury service within those boundaries. Moreover, Carver presents no evidence that the five-county area from which the jury venire was chosen was gerrymandered to exclude African

Americans. *See Grisham*, 69 F.3d at 1080. Thus, Carver has presented insufficient evidence to establish a *prima facie* case of a fair-cross-section violation.

**AFFIRMED.**