# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1164
_____

United States of America,

*Plaintiff - Appellee,*

v.

Scott Thomas Boyle,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 19, 2012
Filed: November 26, 2012

_____

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Following a jury trial, Scott Boyle was convicted of the sexual exploitation of a minor and attempting to sexually exploit a minor, in violation of 18 U.S.C. §§ 2251(a) and (e), and of possession of materials involving the sexual exploitation

of a minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). The district court[1] sentenced Boyle to 180 months' imprisonment. Boyle appeals his convictions, and we affirm.

## I.

In June 2010, Boyle and his girlfriend, Kasondra Lutz, lived together in Fargo, North Dakota. While cleaning underneath Boyle's computer desk, Lutz discovered two videotapes concealed behind the desk. When Lutz watched parts of each tape, she saw two naked young girls, one of whom she recognized as Boyle's three-year-old daughter, A.B. Lutz also recognized Boyle when he appeared in one of the tapes.

After watching the videos, Lutz hid them in a storage unit on her mother's property. Lutz eventually asked Boyle about the videotapes over the phone. She told him that if things were going to work out between them "she needed to know the truth."

Boyle initially called Lutz a liar and denied knowing anything about the tapes. Later in the conversation, however, he asked Lutz what she did with the tapes. Lutz lied and told him that she destroyed the tapes. Boyle responded that if anyone "found them or got ahold of them that his life would be ruined." After being released from a drug rehabilitation program in April 2011, Lutz "wanted to do the right thing," and gave the tapes to her probation officer, Erin Williams. Williams brought the tapes to the Fargo Police Department.

Lutz told the police that one of the girls on the tape was A.B. and that the other girl might be the daughter of Boyle's former friend, Jayne Marek. Using police files

---

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

and school records, the police learned that Marek's daughter was named S.M. A detective interviewed S.M. and determined that she was the other girl in the videos.

This case involves one of the two tapes Lutz found behind Boyle's desk. The tape includes three scenes that led to the charges against Boyle. The first is a portion of the video that depicts A.B. and S.M. playing naked on a bed. The second is a portion that depicts A.B. and S.M. bathing. In both scenes, the camera is hidden and Boyle repeatedly enters the room to adjust it. In the bedroom scene, Boyle moves a stack of clothes or towels that is between the camera and S.M. In the bathroom scene, Boyle gives the girls soda, ice cream, and a cookie, and Boyle tells S.M. that if she gives him a towel she is wearing, he will dry it and give it back to her when she gets out of the tub. The third scene is a looping series of still images that depict a prepubescent vagina. Jayne Marek testified that A.B. was three years old and S.M. was ten or eleven years old at the time of the recordings.

On July 14, 2011, a grand jury returned a three-count indictment against Boyle. Count One charged Boyle with producing and attempting to produce "a videotape containing still images of a minor engaging in sexually explicit conduct." Count Two charged him with producing and attempting to produce "a videotape containing videos of children engaging in sexually explicit conduct." Count Three charged Boyle with possessing materials depicting a minor engaging in sexually explicit conduct. Boyle pleaded not guilty, and the case proceeded to trial.

The government's theory of the case was that Boyle surreptitiously recorded the girls to produce sexually explicit images of S.M. The prosecution argued that all of Boyle's actions, including his repeated adjustments of the camera, were an attempt to capture S.M.'s genitals on the videotape.

Boyle's defense was that he had no idea the tapes even existed, and that he had been framed by Marek. Boyle testified that Marek asked him to monitor the children

because she wanted to smoke drugs in a nearby room. According to Boyle, Marek was afraid that S.M. would catch her using drugs unless Marek had some way of watching her. Boyle testified that his adjustments of the camera were not attempts to focus on S.M.'s genitals, but rather attempts to improve the reception of the television in the room next door or to protect the camera from a dripping showerhead. Boyle said he did not know that the footage of the monitoring was recorded onto a videotape. Marek testified that she never asked Boyle to monitor S.M.

After the close of the government's case, the district court dismissed Count One, ruling that the government had presented insufficient evidence that Boyle produced the still images. The court instructed the jury that Count One had been resolved, that it should not speculate as to why, and that it should not discuss Count One during its deliberations. The court then submitted Counts Two and Three to the jury, and the jury convicted Boyle on both counts. The district court then denied Boyle's motions for a judgment of acquittal and for a new trial and imposed sentence.

## II.

Boyle's principal contention on appeal is that his conviction on Count Two must be set aside because the jury might have convicted him for producing the still images that were at issue in Count One. Because the district court already had ruled that there was insufficient evidence to show that Boyle produced the still images, Boyle asserts that the district court erred by failing to ensure that the jury did not consider those still images when deliberating on Count Two. He contends that the conviction violates his rights under the Fifth and Sixth Amendments. Neither argument was raised in the district court, and we conclude that there was no plain error.

The instruction on Count Two provided that the prosecution was required to prove, among other elements, that Boyle produced or attempted to produce "a visual

depiction of videotape images" of a minor engaging in sexually explicit conduct. The court then informed the jury that to find the defendant guilty, the jury must unanimously agree that the government had proved all elements beyond a reasonable doubt. Boyle argues that because the videotape received in evidence included both still images and moving images, a jury was likely to understand the phrase "videotape images" to allow a conviction based on either set of images. But because the district court already had ruled that there was insufficient evidence to show that Boyle produced the still images, as charged in Count One, Boyle argues that the court should have given a specific unanimity instruction to ensure that the jury considered only the moving images when deciding Count Two. The failure to give such an instruction, he contends, resulted in a violation of his Sixth Amendment right to a unanimous jury verdict, *see McDonald v. City of Chicago*, 130 S. Ct. 3020, 3035 n.14 (2010), and his right under the Due Process Clause of the Fifth Amendment to be free of a conviction except upon sufficient proof. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

There was no violation of the Sixth Amendment. A general unanimity instruction is "usually sufficient to protect a defendant's Sixth Amendment right to a unanimous verdict." *United States v. Lalley*, 257 F.3d 751, 756 (8th Cir. 2001). The jury here was informed that it must unanimously agree that the government had proved beyond a reasonable doubt that Boyle acted "for the purpose of producing a visual depiction of videotape images" of minors engaged in sexually explicit conduct. Even if we assume that the jury might have believed that it could convict Boyle for producing the still images, the jury was instructed that it must reach a unanimous verdict. That general instruction on unanimity was sufficient to protect Boyle's rights under the Sixth Amendment. *See United States v. Davis*, 154 F.3d 772, 783 (8th Cir. 1998).

The gravamen of Boyle's appeal is not that the jury was non-unanimous, but that the jury might unanimously have convicted him for producing the still images. Since the district court already ruled that there was insufficient evidence to prove that

Boyle produced the still images, Boyle argues that the district court's failure to ensure that the jury considered only the moving images when deliberating on Count Two violated his rights under the Due Process Clause. For this proposition, he relies on *Yates v. United States*, 354 U.S. 298 (1957), and *Stromberg v. California*, 283 U.S. 359 (1931), two cases in which the Supreme Court applied a rule that "requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates*, 354 U.S. at 312.

Boyle's claim for relief based on *Yates* and *Stromberg* fails in light of *Griffin v. United States*, 502 U.S. 46, 59 (1991). *Griffin* explained that the rule of *Yates* and *Stromberg* does not justify setting aside a general verdict simply because one of the possible bases of conviction was unsupported by sufficient evidence. This is so, because although "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . jurors *are* well equipped to analyze the evidence." *Id.* at 59. So when one theory of conviction is supported by sufficient evidence and another is not, a reviewing court presumes that the jury convicted on the supported theory. Here, the government's theory on Count One was not contrary to law in the sense described in *Griffin*: Boyle's alleged act of producing the still images was not protected by the Constitution; the charge was not time barred; and the alleged act did not fail to come within the statutory definition of the crime. *See id.* at 59. The district court dismissed Count One only because it was not supported by sufficient evidence. "When the district court submits to the jury two or more grounds for conviction, for one of which there was insufficient evidence, and it is impossible to tell on what grounds the jury decided the defendant's guilt, we cannot reverse the jury's general verdict of guilty." *United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996). Even assuming the instructions did not inform the jury to exclude the still images from consideration when deciding Count Two, that alleged shortcoming in the instructions is not a basis to set aside the conviction.

For similar reasons, the absence of a limiting instruction ordering the jury to refrain from considering the still images when deciding Count Two is not grounds for a new trial. The Court in *Griffin* explained that a district court has discretion to give such an instruction, and that "if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." 502 U.S. at 60. The district court here understandably concluded in retrospect that a limiting instruction would have been preferable, but the instructions as given did not amount to a plain error. The failure to give a limiting instruction of the sort now urged by Boyle, while perhaps inconsistent with the "preferable" course of action, "does not provide an independent basis for reversing an otherwise valid conviction." *Id.*

III.

In a related argument, Boyle contends that he was subjected to double jeopardy, because the conviction on Count Two was premised on acquitted conduct that was charged in Count One. He contends that the government conceded as much in its opening statement, where the prosecutor summarized the charges against Boyle as follows: "[T]he United States has charged the defendant with two counts of sexual exploitation of children. Count One charges the defendant with producing still images of [S.M.] engaged in sexually explicit conduct, and Count Two charges the defendant with producing video footage *depicting the same*." T. Tr. 195 (emphasis added). Boyle asserts that when the prosecutor referred to footage "depicting the same," she admitted that Count Two was based on "the same" images that allegedly supported Count One.

For the reasons discussed, we presume that the jury's verdict on Count Two was based on the moving images. The moving images are a "visual depiction of videotape images," and there was sufficient evidence to support a finding that Boyle produced them and attempted to portray minors engaged in sexually explicit conduct. The

-7-

government's opening statement does not undermine this presumption that the jury relied on the moving images. Viewed in context, the statement that Count Two involves video footage "depicting the same" refers generally to minors engaging in sexually explicit conduct, but not to precisely the same images that were at issue in Count One. The prosecutor's opening statement clearly explained that Boyle was charged with producing a video recording of moving images. The statement previewed evidence that Boyle "secretly recorded" young girls while they bathed and played naked in a bedroom, and asserted that Boyle intended the recordings to be sexual in nature, "even though . . . the children are acting or behaving innocently in these videos." T. Tr. 186-87. The prosecutor continued by describing how Boyle adjusted the hidden camera in the bathroom, "in an attempt to record [S.M.'s] genitals," and then adjusted the hidden camera again while the children were playing naked in the bedroom. T. Tr. 187. She then explained that "*[i]n addition to these recordings*, there were still images on that VHS tape," which "were taken at a different location than the video footage." T. Tr. 188 (emphasis added). This context undermines Boyle's effort to attribute a concession to the government. There was no violation of the Double Jeopardy Clause.

## IV.

Boyle next contends that the district court violated his Sixth Amendment right to a public trial. At trial, the government played the videotape for the jury. Before playing the tape, the court allowed the prosecution to turn off a television monitor that was facing the gallery, so that only the participants in the trial could see the images that formed the basis for the government's allegations. Boyle argues that the court's action amounted to a "closure" of Boyle's trial without sufficient findings or justification, contrary to the standards set forth in *Waller v. Georgia*, 467 U.S. 39, 45 (1984).

Boyle did not object at trial to the darkening of the monitor, and we see no plain error that warrants relief. It is not obvious that the decision to turn off a monitor facing the gallery during the display of allegedly sexually explicit images constitutes a "closure" of the courtroom for purposes of the Sixth Amendment. The Constitution's "requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978). The temporary darkening of one monitor did not prevent anyone from attending the trial or from reporting on what transpired. As other courts have observed, it is common practice for a court to receive exhibits during trial without having them "passed around to the spectators in the courtroom," *D'Aquino v. United States*, 192 F.2d 338, 365 (9th Cir. 1951), or otherwise ensuring that documents are "simultaneously displayed to the public." *United States v. Lnu*, 575 F.3d 298, 307 (3d Cir. 2009). The Third Circuit observed recently that there is "no authority suggesting that such a practice is unconstitutional." *Id.* The district court's decision to refrain from using the full measure of technology available for broadcasting the proceedings to the public thus did not obviously transgress the Sixth Amendment.

V.

Boyle also challenges the sufficiency of the evidence to support his convictions on Counts Two and Three. Count Two charged Boyle with the sexual exploitation of a minor and attempting to sexually exploit a minor, in violation of 18 U.S.C. §§ 2251(a) and (e). Count Three charged Boyle with the possession of materials involving the sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). We address the sufficiency of the evidence for each conviction separately.

A.

Section 2251(a) makes it unlawful for a person "knowingly" to employ, use, persuade, induce, entice, or coerce "any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct." Section 2251(e) forbids an attempt to violate § 2251(a). The court properly instructed the jury that it could convict Boyle for violating § 2251(a) or for attempting to do so. Because the jury returned a general verdict of guilty, we must uphold the jury's verdict if the evidence is sufficient to support either of the charged theories. *Turner v. United States*, 396 U.S. 398, 420-21 (1970).

The evidence is sufficient to support the jury's verdict, because a rational jury could have found the essential elements of at least the attempt offense beyond a reasonable doubt. Boyle argues that his conviction on Count Two should be reversed because the videos were not sexually explicit. But he does not address the possibility that the jury convicted him of attempting to produce sexually explicit images. As the district court explained in response to Boyle's post-trial motions, the jury "could have concluded [Boyle's] repeated manipulation of the camera was an attempt to get more sexually suggestive images—images that would elicit a sexual response in the intended viewer." Although Boyle offered an alternative explanation for his appearances on the video, the jury was free to disbelieve his testimony and to infer that Boyle's repeated adjustments of the camera were aimed at focusing the camera on S.M.'s genitals. *See United States v. Johnson*, 639 F.3d 433, 439-41 (8th Cir. 2011). There was thus sufficient evidence to support Boyle's conviction on Count Two.

B.

Count Three charged a violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). To establish this charge, the government was required to show (1) that Boyle knowingly

possessed a videotape that contained one or more visual depictions, the production of which involved the use of a minor engaging in sexually explicit conduct and that the depictions were of the minor engaging in such conduct, (2) that Boyle knew the visual depictions were of a minor engaged in sexually explicit conduct, and (3) that the videotape containing the depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce.

The government contends that either the still images or the moving images on the videotape provide a sufficient basis to sustain the conviction on Count Three, but defends the judgment primarily based on Boyle's knowing possession of the still images. Boyle argues that this evidence was insufficient for three reasons.

First, Boyle says the government failed to prove that the girl in the still images was a minor. Jayne Marek testified, however, that her daughter S.M. was ten or eleven years old, and that she could tell from the background that the still images were taken in S.M.'s bedroom. The girl in the still images was wearing a skirt that appeared to be the same skirt S.M. was wearing in a different part of the videotape. The jury thus reasonably could have inferred that the still images depicted S.M., who was a minor. Next, Boyle contends that the still images did not depict sexually explicit conduct. "Sexually explicit conduct" includes a "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). The still images on the videotape focused exclusively on the girl's genitals, and a jury reasonably could infer that they were "designed to appeal to the sexual appetite . . . by . . . focusing on the pubic area of the subject in a way that is lewd or lurid." *United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002). Finally, Boyle argues that the government failed to establish a sufficient connection between his conduct and interstate or foreign commerce. Although the government presented testimony that the videotape was made in China, and a jury thus could infer that the videotape moved in foreign commerce, Boyle contends that *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012), requires the government to prove more.

The Court's recent decision, however, did not address the federal government's authority to regulate articles, like the videotape, that have moved in foreign commerce. *See United States v. Lopez*, 514 U.S. 549, 558 (1995). The movement of the tape in foreign commerce is thus sufficient under our precedent to satisfy the statute's jurisdictional element. *See United States v. Koch*, 625 F.3d 470, 479 (8th Cir. 2010). There was sufficient evidence to support the jury's verdict on Count Three.

*     *     *

For the foregoing reasons, the judgment of the district court is affirmed.

_____