[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12612
_____

D.C. Docket No. 2:12-cr-00201-MHT-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA RAY PARTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 30, 2014)

Before ANDERSON and EBEL,* Circuit Judges, and UNGARO,** District Judge.

_____

*Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

**Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida, sitting by designation.

ANDERSON, Circuit Judge:

Parton asks us in this appeal to overrule our prior, binding precedent in United States v. Smith (Smith II), 459 F.3d 1276 (11th Cir. 2006). We decline to do so.

Count I of the indictment charged Parton, inter alia, as follows:

> On or about May 1, 2011, in Elmore County, within the Middle District of Alabama, the defendant, JOSHUA RAY PARTON, did employ, use, persuade, induce, entice, and coerce G.C.G., a minor child, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. The visual depictions were produced using cellular telephones, digital video cameras, computers, and other materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce. All in violation of Title 18, United States Code, Section 2251(a).

18 U.S.C. § 2251(a) provides in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means . . . .

Parton moved to dismiss the indictment, arguing that the interstate commerce nexus was insufficient. He argues that the sole interstate commerce nexus asserted by the government is that the electronic device that Parton used to make the videos or photos traveled in interstate commerce. He argues that such an interstate commerce nexus is too tenuous to support a federal prosecution.

2

After his motion to dismiss was denied, Parton pled guilty, inter alia, to Count I.  The plea agreement expressly reserved Parton's right to appeal on this interstate commerce issue.

As Parton acknowledges, this Court in Smith II squarely rejected the precise argument he now presents on appeal.  Smith, like Parton, was convicted of one count of producing child pornography in violation of 18 U.S.C. § 2251(a).  Like Parton, Smith argued that 18 U.S.C. § 2251(a) was an unconstitutional exercise of Congress's Commerce Clause authority as applied to his conduct.  Relying upon the Supreme Court's decision in Gonzales v. Raich, 545 U.S. 1, 125 S. Ct. 2195 (2005), and also upon the extensive analysis of this Court in United States v. Maxwell (Maxwell II), 446 F.3d 1210 (11th Cir. 2006), this Court in Smith II held that the application of § 2251(a) to Smith's intrastate production of child pornography was within Congress's congressional authority.  We held:

> Section 2251(a) "is part of a comprehensive regulatory scheme criminalizing the receipt, distribution, sale, production, possession, solicitation and advertisement of child pornography." *Maxwell II*, 446 F.3d at 1216–17.  As such, we need only determine "whether Congress could rationally conclude that the cumulative effect of the conduct by [Smith] and his ilk would substantially affect interstate commerce." *Id.* at 1218.  This is because, "where Congress has attempted to regulate (or eliminate) an interstate market, *Raich* grants Congress substantial leeway to regulate purely intrastate activity (whether economic or not) that it deems to have the capability, in the aggregate, of frustrating the broader regulation of interstate economic activity." *Id.* at 1215.

3

Smith II, 459 F.3d at 1285.  In Smith II, we held that the analysis in Maxwell II was controlling.  The extensive analysis in Maxwell II had carefully analyzed the recent Supreme Court decision in Raich.  Maxwell II also distinguished United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740 (2000), and United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995), in part because the regulatory scheme at issue in Maxwell II (as in Smith II and in this case) was a comprehensive regulation of the multi-million dollar child pornography industry, a market that is "quintessentially economic."  Maxwell II, 446 F.3d at 1217.  Thus, Maxwell II held that the "'case law firmly establishes Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce.'"  Id. at 1214 (quoting Raich, 545 U.S. at 17, 125 S. Ct. at 2205).  We also held:

> Thus, where Congress comprehensively regulates economic activity, it may constitutionally regulate intrastate activity, whether economic or not, so long as the inability to do so would undermine Congress's ability to implement effectively the overlying economic regulatory scheme.
>      . . . Congress need only have "*a rational basis* for concluding that leaving home-consumed marijuana outside federal control would . . . affect price and market conditions."  Moreover, in calculating whether the intrastate activity sought to be regulated "substantially affects" interstate commerce, Congress . . . is entitled to assess the aggregate effect of the non-commercial activity on the interstate market.

Id. at 1215 (footnote omitted) (citation omitted) (quoting Raich, 545 U.S. at 19, 125 S. Ct. at 2207).

4

Parton acknowledges the binding force of Smith II and Maxwell II. However, he suggests that the recent decision by the Supreme Court in National Federation of Independent Business v. Sebelius, ___ U.S. ____, 132 S. Ct. 2566 (2012), effectively overruled Smith II and Maxwell II.[1]  We disagree.  As we held in United States v. Kaley, "We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court.  To constitute an overruling for the purposes of this prior panel precedent rule, the Supreme Court decision must be clearly on point."  579 F.3d 1246, 1255 (11th Cir. 2009) (citation omitted) (internal quotation marks omitted).  We readily conclude that the Supreme Court's recent decision in Sebelius did not overrule Smith II and Maxwell II.[2]  In Sebelius, Chief Justice Roberts was of the opinion that the Affordable Care Act could not be sustained under Congress's power pursuant to the Commerce Clause.  However, his rationale has no application to this case or to the situation addressed in Smith II or Maxwell II.  The Chief Justice reasoned that although Congress has the power to  regulate existing commercial activity, the Commerce Clause cannot be interpreted to grant Congress the power to "compel[] individuals to *become* active in commerce by purchasing a product."

---

[1]    Parton also argues that the Supreme Court decision in United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740 (2000), erodes Smith II and Maxwell II.  This argument is wholly without merit.  As noted above, Maxwell II expressly distinguished Morrison.

[2]    We need not address the government's suggestion that the Commerce Clause ruling in Sebelius is dicta.  We can assume arguendo that its Commerce Clause ruling was holding because the ruling is in an entirely different context and certainly is not clearly on point with Smith II and Maxwell II.

___ U.S. at ____, 132 S. Ct. at 2587; see also id. at ____, 132 S. Ct. at 2644

(Scalia, J., Kennedy, J., Thomas, J., and Alito, J., dissenting) ("But that failure

[i.e., the failure to maintain health insurance]—that abstention from commerce—is

not 'Commerce.'  To be sure, *purchasing* insurance *is* 'Commerce'; but one does

not regulate commerce that does not exist by compelling its existence.").  Unlike

the inactivity of the uninsured individuals addressed by the Chief Justice and the

four dissenters in Sebelius, Parton produced child pornography; it was this activity

which was criminalized by § 2251(a).

We conclude that the Supreme Court in Sebelius said nothing to abrogate its

holding in Raich to the effect that Congress has the power, as part of a

comprehensive regulation of economic activity, to regulate purely local activities

that are part of an economic "class of activities" that have a substantial effect on

interstate commerce.  Similarly, Sebelius said nothing to abrogate the holdings of

this court in Smith II and Maxwell II, which closely followed the rationale of

Raich.[3]  Indeed, Maxwell II found very little to distinguish Maxwell's claim from

that of Raich.  Maxwell II, 446 F.3d at 1216.

---

[3]    We note that the Sixth Circuit has rejected this precise argument and has held that Sebelius did nothing to abrogate the Supreme Court's holding in Raich that Congress has the power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.  United States v. Rose, 714 F.3d 362, 370–71 (6th Cir.), cert. denied, 134 S. Ct. 272 (2013); see also United States v. Robbins, 729 F.3d 131, 135–36 (2d Cir. 2013) (rejecting an argument that Sebelius eroded prior precedent sustaining the constitutionality of the Sex Offender Registration and Notification Act requiring the defendant to update his registration after traveling in interstate commerce), cert. denied, 134 S. Ct. 968

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

(2014); <u>United States v. Roszkowski</u>, 700 F.3d 50, 57–59 (1st Cir. 2012) (rejecting an argument that <u>Sebelius</u> eroded prior precedent sustaining the constitutionality of the statute criminalizing possession by a convicted felon of a firearm that previously traveled in interstate commerce), <u>cert. denied</u>, 133 S. Ct. 1278 (2013); <u>United States v. Alcantar</u>, 733 F.3d 143, 145–46 (5th Cir. 2013) (same), <u>cert. denied</u>, 134 S. Ct. 1570 (2014); <u>United States v. Henry</u>, 688 F.3d 637, 641 & n.5 (9th Cir. 2012) (stating that <u>Sebelius</u> did nothing to abrogate prior precedent upholding the constitutionality of a ban on possession of machine guns even though that ban included homemade machine guns that had not traveled in interstate commerce), <u>cert. denied</u>, 133 S. Ct. 996 (2013); <u>United States v. Boyle</u>, 700 F.3d 1138, 1146 (8th Cir. 2012) (noting that <u>Sebelius</u> did not address the federal government's authority to regulate articles, such as the videotape made in China that was involved in that case, that have moved in foreign commerce), <u>cert. denied</u>, 133 S. Ct. 2371 (2013).