[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10259

_____

KENNETH R. HEYMAN,
an individual,
SHORT TERM RENTAL OWNERS ASSOCIATION
OF GEORGIA, INC.,

Plaintiffs-Appellants,

*versus*

MOLLY COOPER,
DENNIS T. BROWN,
LAURA SEMANSON,
STEVE ZARING,
GENE SAMS, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:19-cv-00108-RWS

_____

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

NEWSOM, Circuit Judge:

Forsyth County, Georgia recently amended its Unified Development Code to expressly prohibit certain property owners from renting their homes on a short-term basis. But the as-amended ordinance includes a grandfathering provision under which a property owner who was engaged in a previously-lawful-but-now-prohibited use may continue to engage in that use.

Plaintiffs are property owners in Forsyth County who used to rent their homes on a short-term basis. They sued to vindicate that use as grandfathered into the amended UDC. Accordingly, our task is to determine whether plaintiffs' short-term rentals were permitted under the pre-amendment UDC and whether, as a consequence, they retain a grandfathered right to continue doing so. The district court held that the practice wasn't—and thus isn't—permitted. We agree and affirm.

I

In 2019, the Forsyth County Board of Commissioners voted to amend its UDC. As amended, the ordinance does two things

relevant to this dispute.  First, it expressly and unequivocally bans short-term rentals of residentially zoned properties.  Second, it includes a grandfathering provision, which permits the continuation of any "lawful but nonconforming use of any structure or land at the time of . . . enactment."  The short-term-rental ban went into effect in 2020, with violations punishable by up to a $1,000 fine or 60 days' imprisonment.

Plaintiffs—a Forsyth County property owner who rents his home on a short-term basis and an association that represents similarly situated homeowners—sued, seeking declaratory judgment, injunctive relief, and damages under 42 U.S.C. § 1983.  Alongside their claim that they held a grandfathered right to rent short term, plaintiffs asserted a smattering of constitutional and statutory claims.  But, as is often the case, the ensuing litigation had a winnowing effect.  As matters currently stand, we are left with one straightforward question:  Did the pre-amendment UDC permit or prohibit short-term rentals?  The County contends that such rentals have always been prohibited; the property owners disagree.

For its part, the district court—facing what it termed "a narrow statutory interpretation issue"—concluded that "rentals for less than a week were not lawful under the prior Ordinance and are therefore not grandfathered nonconforming uses under the amended Ordinance."  Accordingly, the court dismissed plaintiffs' complaint.

## II

No one disputes that the as-amended UDC eliminates property owners' right to *begin* using their properties as short-term rentals. The only question is whether its grandfathering provision permits plaintiffs to *continue* doing so. Thus, our inquiry focuses on whether the pre-amendment version of the ordinance permitted short-term rentals.[1]

As in every statutory-interpretation case, "we start with the text—and, if we find it clear, we end there as well." *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020). The pre-amendment UDC permitted an individual to use his residential home as a "dwelling unit," and all agree that the dispute turns on the meaning and application of that term.[2] The old UDC defined "dwelling unit" as follows:

---

[1] We review questions of statutory construction de novo. *United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992). "A municipal ordinance . . . is subject to the same rules that govern the construction of statutes." *Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1206 n.14 (11th Cir. 2003) (per curiam).

[2] Although it isn't exactly self-evident, the (very) short explanation for the centrality of the "dwelling unit" definition is that when a residential home ceases to be a "dwelling unit," it becomes a "use[] in violation of th[e] Code"—subjecting the homeowner to civil and criminal penalties. In any event, because all parties agree that the interpretation of the term "dwelling unit" controls here—and, indeed, continued to defend that position through supplemental briefing and at oral argument—we needn't dive any deeper into the weeds on that issue.

One or more rooms connected together and consti-
tuting a separate, independent housekeeping estab-
lishment for use on a basis *involving owner occu-
pancy or rental or lease on a weekly, monthly or
longer basis*, with provisions for cooking, eating and
sleeping, and physically set apart from any other
rooms or dwelling units in the same structure.

Forsyth Cnty. Unified Dev. Code Ch. III, art. II (2019) (emphasis
added).

The heart of the parties' dispute boils down to which term
or terms—"owner occupancy," "rental," and/or "lease"—the
phrase "on a weekly, monthly or longer basis" modifies. For rea-
sons we'll explain, we conclude that the durational requirement is
best read to modify "rental" and "lease" but not "owner occu-
pancy." Therefore, short-term "rental[s]"—those that are less than
"weekly"—weren't permitted under the pre-amendment version
of the UDC and, consequently, weren't grandfathered into the cur-
rent version.

## A

In interpreting written law, our duty is to "determine the
ordinary public meaning" of the provision at issue. *Bostock v.
Clayton County*, 140 S. Ct. 1731, 1738 (2020). The canons of con-
struction often "play a prominent role" in that endeavor, serving as
"useful tools" to discern that ordinary meaning. *Facebook, Inc. v.
Duguid*, 141 S. Ct. 1163, 1173 (2021) (Alito, J., concurring). But the
canons "are not 'rules' of interpretation in any strict sense."

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 51 (2012). Instead, they serve only as "presumptions about what an intelligently produced text conveys." *Id.* So we shouldn't treat the canons "like rigid rules," lest we be "le[d] . . . astray." *Duguid*, 141 S. Ct. at 1175 (Alito, J., concurring).

Put simply, the canons are meant to help us carry out our primary task: discerning the text's ordinary public meaning. But as this case shows, sometimes a wooden application of the canons would supplant rather than supply ordinary meaning. When that happens, we remain obligated to the text—not to what the canons might suggest about the text.

**B**

Typically, when—as here—a statutory provision includes a list of nouns followed by a modifier, one of two competing canons applies to resolve any dispute about which nouns the modifier modifies: (1) the "rule of the last antecedent" or (2) the "series-qualifier canon." *See generally Lockhart v. United States*, 577 U.S. 347 (2016). As our windup might suggest, however, neither canon supplies the provision's ordinary meaning in this case. Let us explain why.

According to the rule of the last antecedent, a "limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Id.* at 351 (cleaned up); *see also Barnhart v. Thomas*, 540 U.S. 20, 26–27 (2003). The rule embodies a "commonsense principle of grammar," Scalia &

Garner, *supra*, at 144, and "reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it," *Lockhart*, 577 U.S. at 351.

The series-qualifier canon, conversely, instructs that "[w]hen there is a straightforward, parallel construction that involves all nouns in a series, a modifier at the end of the list normally applies to the entire series." *Lockhart*, 577 U.S. at 364 (Kagan, J., dissenting) (quotation omitted); *see also* Scalia & Garner, *supra*, at 147–51. It exemplifies the unremarkable convention that "when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline v. United States*, 572 U.S. 434, 447 (2014) (cleaned up).

Were we to apply the rule of the last antecedent here, the modifier "on a weekly, monthly or longer basis" would attach *only* to the term "lease"—"the item directly before it." *Lockhart*, 577 U.S. at 351. By contrast, were we to apply the series-qualifier canon, the modifier would attach to "owner occupancy," "rental," *and* "lease"—the "entire series." *Id.* at 364 (Kagan, J., dissenting). Although either canon could conceivably shed light on the UDC's meaning, neither, we conclude, quite fits the bill.

1

First, a rigid application of the last-antecedent rule would defeat the UDC's plain meaning. Under that canon, the modifier "on

a weekly, monthly or longer basis" would attach only to the term "lease"—and thus not to the term "rental." But for reasons we'll explain, there's no meaningful distinction between a "lease" and a "rental." Accordingly, applying the modifier to one but not the other would render the durational requirement totally ineffectual.

A "lease" is "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu[ally] rent." *Lease*, Black's Law Dictionary (11th ed. 2019); *see also Lease*, Webster's Third New International Dictionary 1286 (2002) (defining "lease" as "a contract by which one conveys lands, tenements, or hereditaments for life, for a term of years, or at will for any less interest than that of the lessor"). A "rental" is "a property (as an apartment, automobile, dinner jacket) that is given for use in return for payment." *Rental*, Webster's Third at 1923. We see no functional difference between "convey[ing] the right to use . . . property . . . for consideration," on the one hand, and "giv[ing]" "property . . . for use in return for payment," on the other. In fact, variations of the terms "rental" and "lease" are defined by reference to one another: As *Black's* shows, a "lease" is "usu[ally]" paid in "rent," *see Lease*, Black's Law Dictionary; and as *Webster's* shows, a "renter" is "one who rents: as," among other things, "the lessee," *Renter*, Webster's Third at 1923.

To be sure, the term "lease" can sometimes be used to suggest a longer (though still temporary) term than "rental." For example, one would typically say that a vacationer "rents" his car

21-10259                Opinion of the Court                    9

from Hertz—not that he "leases" it.  Conversely, a driver might "lease" his everyday vehicle from Ford.  But that distinction doesn't always hold.  It would be perfectly normal to say, for instance, either that a tenant is "renting" her apartment for a year *or* that she is "leasing" it for the same period—either term works.

Moreover, no dictionary of which we're aware defines "lease" to entail a durational requirement indicating a greater degree of permanence than a "rental."  Many define "lease" generally as a possessory interest that lasts only "for a specified time," *Lease*, Oxford Dictionary of English 1005 (3d ed. 2010), or "for a specified term," *Lease*, Merriam-Webster's Collegiate Dictionary 708 (11th ed. 2014); *see also Lease*, The Wolters Kluwer Bouvier Law Dictionary: Desk Edition (Stephen Michael Sheppard, ed., 2012) (defining "lease" as lasting "for a time").  Even those that employ more legalese lack any particular durational requirement—a "lease term can be for life, for a fixed period, or for a period terminable at will." *Lease*, Black's Law Dictionary; *accord Lease*, Webster's Third at 1286 (same); *Lease*, Oxford English Dictionary (same); *Lease*, Merriam-Webster's Unabridged Dictionary (same).  Thus, although conversational usage may at times suggest that a "lease" typically lasts longer than a "rental," that's not always true, and, in any event, there's nothing inherent in the definitions of those terms to support that intuition.[3]

---

[3] We don't mean to suggest that "how people talk" is irrelevant to a text's ordinary meaning—of course it isn't. *United States v. Caniff*, 916 F.3d 929, 941 (11th Cir. 2019) (Newsom, J., concurring in part and dissenting in part).  But

Why does the slipperiness of the distinction between leases and rentals matter?  Because if we were to apply the rule of the last antecedent here—attaching the phrase "weekly, monthly or longer basis" only to "lease"—the qualifier would lack any practical import.  Any property owner wishing to avoid the durational requirement would simply re-label his "lease" agreement a "rental" agreement and thereby legitimize his once-prohibited use.  Thus, it seems to us, we can't sensibly read the durational requirement as applying only to "lease."  *See* Scalia & Garner, *supra*, at 174 ("[E]very word and provision is to be given effect . . . .").

## 2

Blind devotion to the series-qualifier canon wouldn't fare much better.  Applying that canon would require us to attach the durational requirement not only to both "lease" and "rental," but also to "owner occupancy."  Doing so would make little sense.

"Owner occupancy" entails an owner's "taking and holding possession of real property."  *Occupancy*, Webster's Third at 1560.  And "possession" requires that the property be "in[] one's control" or held "at one's disposal."  *Possession*, Webster's Third at 1770.  Given those definitions, it's not at all clear what work the

"conversational conventions"—relevant as they may be—"do not *control* [a statute's] legal analysis."  *Bostock*, 140 S. Ct. at 1745 (emphasis added).  Therefore, in a case like this one—where conversational usage cuts both ways and an exhaustive review of dictionary definitions favors one interpretation over another—we see no reason to privilege indeterminate conversational usage over more formal indicators of meaning.

durational requirement would be doing were we to attach it to "owner occupancy." Owner occupancy is already—and necessarily—occurring on a "weekly . . . or longer basis." Put slightly differently, because the durational requirement adds nothing to "owner occupancy," it isn't "applicable as much" to that term as to the other two. *Paroline*, 572 U.S. at 447. Accordingly, the "natural construction of the language" demonstrates that the series-qualifier canon isn't a good fit. *Id.*

It's true that the surplusage that would result from attaching the durational requirement to "owner occupancy" does less violence to the text than would attaching the modifier only to "lease." Nonetheless, when possible, we should avoid interpreting a provision in a way that "needlessly . . . causes it to duplicate another provision or to have no consequence." Scalia & Garner, *supra*, at 174. Because it's possible to do so here—and because nothing obligates us to reflexively pick one of two competing interpretive canons— that's the course we take.[4]

---

[4] It's conceivable, we suppose, that "owner occupancy" might mean something like requiring an owner's actual presence—*i.e.*, physically occupying the space. But if "owner occupancy" requires physical presence, attaching the durational requirement to it would produce an absurd result. On that understanding, a homeowner would be required to remain in—and thereby "occupy"—his primary residence for at least a week at a time, which would prohibit him leaving for vacations, running errands, or even going out to dinner.

⋆  ⋆  ⋆

We're left with the conclusion that neither the rule of the last antecedent nor the series-qualifier canon—one of which, we acknowledge, would *typically* apply to a provision that includes a list of nouns followed by a single modifier—gives the text its ordinary meaning here.  And perhaps that's not particularly surprising, as both canons are uniquely defeasible by context.  *See id.* at 150 (describing the series-qualifier canon as "highly sensitive to context"—"[p]erhaps more [so] than most of the other canons"); *see also Barnhart*, 540 U.S. at 26 (stating that the last-antecedent rule "can assuredly be overcome by other indicia of meaning").  In any event, because our obligation is to the text and not the canons *per se*, we move beyond them and on to the task at hand—discerning and applying the ordinary meaning.

## C

Reading the old UDC to reflect "how the English language is generally used," we find a middle ground between the two competing canons to be the most faithful interpretation.  *Duguid*, 141 S. Ct. at 1175 (Alito, J., concurring).  The modifier "on a weekly, monthly or longer basis" attaches to the latter two terms in the list—"rental" and "lease"—but not the first—"owner occupancy." As a matter of logic, linguistics, and common sense, the durational requirement here *must* attach to the latter two items in the list.  If not, we'd render the qualifier meaningless.  *See supra* Part II(B)(1). And for the same reasons, it *can't* attach to the first item in the list.

If it did, we'd render the provision either partially superfluous or, worse, nonsensical. *See supra* Part II(B)(2) & n.4.

Plaintiffs resist that conclusion because, they contend, to apply the modifier to both "rental" and "lease" would strip those terms of independent meaning. It's true, of course, that as a general matter "we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). But that general premise doesn't require a different outcome here.

As an initial matter, "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance." Scalia & Garner, *supra*, at 176. So even if our interpretation rendered either "rental" or "lease" superfluous, it would be perfectly legitimate to choose an "ordinary meaning [over] an unusual meaning that will avoid surplusage." *Id.* That principle carries extra weight where, as already explained, the arguably redundant words that the drafters employed—"rental" and "lease"—are functional synonyms.

In any event, if "rental" and "lease" *were* intended to carry independent meaning, plaintiffs fail to explain how attaching the modifier to both extinguishes that independence. To the contrary, doing so means only (1) that a "rental"—whatever that term means—must be performed "on a weekly, monthly or longer basis," and (2) that a "lease"—whatever *that* term means—must also be performed "on a weekly, monthly or longer basis." Subjecting

two terms to the same condition has no necessary bearing on their underlying meaning.[5]

## III

As a fallback, plaintiffs assert that "[b]ecause the prohibition on 'rentals' of less than a week was not explicit in the ordinances, the former UDC['s short-term rental ban] was void for vagueness." Br. of Appellant at 22.  We disagree.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  "The first step in a vagueness inquiry is to examine the plain language of the statute."  *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010).  "When the plain text of the statute sets forth clearly perceived boundaries, our inquiry is ended."  *Id.*  Just so here.  The

---

[5] To demonstrate that point, we'll borrow (and tweak) an example used by both the majority and dissent in *Lockhart*.  *See* 577 U.S. at 351–52; *id.* at 364 n.1 (Kagan, J., dissenting).  Imagine that an MLB team's general manager asks his scouts to look for "a catcher, outfielder, or pitcher from last year's World Series Champion Atlanta Braves."  Because those terms are in a parallel series with the qualifier at the end—and there being no reason not to apply the qualifier evenhandedly across the entire series—all three players must come from the Braves.  *See id.* at 364 n.1 (Kagan, J., dissenting).  But attaching the modifier—"World Series Champion Atlanta Braves"—doesn't strip the terms of their individual meanings.  A "catcher" remains a fielder positioned in the dirt behind home plate, and an "outfielder" remains a player who stands in the grass and shags balls 350 feet away.  They're just both subject to the same condition—that the particular "catcher" or "outfielder" must come from the "World Series Champion Atlanta Braves."

21-10259              Opinion of the Court                    15

analysis above—which concludes that the plain text of the ordinance prohibited short-term rentals—ends our vagueness inquiry.[6]

★  ★  ★

A brief coda:  No one should read this opinion as a declaration of war on the canons.  It isn't.  The canons are useful tools of construction—tools on which this Court and courts around the country frequently and appropriately rely in a good-faith effort to discern and apply a text's ordinary meaning.

But, like all tools, the canons are sometimes of limited utility.  When that's true, we shouldn't stubbornly insist on pounding square pegs into round holes.  If we do, we're likely to do more harm than good.  Our obligation remains to the duly enacted text.

---

[6] Moreover, and in any event, plaintiffs' argument elides the "useful and real distinction between textual uncertainties that are the consequence of verbal ambiguity . . . and those that are the consequence of a verbal vagueness." Scalia & Garner, *supra*, at 31.  "A word or phrase is ambiguous when the question is which of two or more meanings applies; it is vague when its unquestionable meaning has uncertain application to various factual situations." *Id.* at 32.  Vagueness occurs when terms "are adopted to cover a multitude of situations that cannot practicably be spelled out in detail or even foreseen." *Id.* at 32–33.  For example, a vague statute might prohibit "acting unreasonably" or, to borrow another example, require an agency to apply its "best efforts." *Id.*  Additionally, vagueness is typically intentional rather than a result of poor drafting. *Id.*  That's not what we have here.  At worst, the ordinance here suffers from some ambiguity—the drafters, likely as a "result of carelessness or inattention," left us with an ordinance that either does or doesn't prohibit short-term rentals. *Id.* at 32.  But it isn't vague—the possible applications are finite.

Taking that obligation seriously, we decline to mechanistically apply either of the two most-likely-candidate canons to the ordinance at issue here.  Instead, we opt for what we take to be the best plain-meaning interpretation, pursuant to which short-term rentals were prohibited by the pre-amendment version of the UDC, and thus remain prohibited today.

**AFFIRMED.**