[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13597

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMEL MULDREW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00172-MSS-MRM-1

_____

Before ROSENBAUM, NEWSOM, and ABUDU, Circuit Judges.

PER CURIAM:

Defendant-Appellant Jamel Muldrew claims that his repeated interstate sex trafficking of a minor does not qualify as a "pattern of activity" for purposes of the Sentencing Guidelines' repeat-offender enhancement. We disagree. So after careful consideration, we affirm Muldrew's sentence.

## I.     BACKGROUND

Muldrew arranged transportation for a 17-year-old girl ("Victim 1") from Texas to New Jersey so he could sex-traffic her. Between February and April 2021, Muldrew and Victim 1 traveled through Maryland, North Carolina, Georgia, and Florida. On at least 46 days, Muldrew instructed Victim 1 to advertise sex work online, rented motel rooms for her use, communicated with Victim 1 before and after her sex work, and took a portion of her earnings. Muldrew earned at least $27,740 from Victim 1's commercial sex acts. Through an undercover operation, the Hillsborough County Sheriff's Office in Tampa, Florida, rescued Victim 1 and arrested Muldrew.

A federal grand jury indicted Muldrew on four counts: (1) knowingly transporting a person under the age of 18 for purposes of engaging in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a) and 2; (2) knowingly persuading or enticing a person under

the age of 18 to engage in prostitution,[1] in violation of 18 U.S.C. § 2422(b); (3) using a facility of interstate and foreign commerce to promote and manage prostitution, in violation of 18 U.S.C. § 1952(a)(3)(A) and (b); and (4) knowingly transporting a person in interstate commerce with the intent that she engage in prostitution, in violation of 18 U.S.C. § 2421. On March 28, 2022, Muldrew pled guilty to all four counts of the indictment without the benefit of a plea agreement.

Muldrew's Presentence Investigation Report ("PSI") set the total offense level at 38 and the Guidelines custodial range at 360 months to life. That recommendation included a five-level repeat-offender enhancement under U.S.S.G. § 4B1.5(b)(1). It also included a two-level inducement enhancement, a two-level computer-use enhancement, a two-level commercial-sex-act enhancement, and a three-level acceptance-of-responsibility reduction.

At sentencing, Muldrew objected to the § 4B1.5(b)(1) repeat-offender enhancement (among other enhancements) and argued that a downward variance was warranted based on the 18 U.S.C. § 3553(a) factors. Specifically, Muldrew pointed to his difficult childhood, which included physical and emotional abuse, extreme poverty, and constant exposure to sex work, as his mother was a sex worker and his father was a pimp. Muldrew also cited his history of mental-health challenges.

---

[1] The indictment defined "prostitution" by citation to Fla. Stat. § 796.07.

The district court rejected Muldrew's argument as to the § 4B1.5(b)(1) repeat-offender enhancement.  It found that Muldrew's "multiple acts . . . with respect to one individual minor" qualified as a "pattern of activity" under *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019).  And it stated that it did not "rely simply on the [Guidelines] commentary but on the fact that this is a pattern in the classic sense of the word, the continued use of a minor, a victim, in the course of this conduct over a period of time repeatedly in the same fashion."

Still, the district court determined that a downward variance was warranted.  The district court sentenced Muldrew to 262 months of incarceration on each of Counts One and Two, to be served concurrently; 60 months of incarceration on Count Three, to be served concurrently with his sentences on the other counts; and 120 months of incarceration on Count Four, to be served concurrently with his sentences on the other counts.  It also imposed 120 months of supervised release and a $27,740 restitution judgment.  Muldrew timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's interpretation and application of the Sentencing Guidelines to the facts *de novo*.  *United States v. Moran*, 778 F.3d 942, 959 (11th Cir. 2015).

## III.    DISCUSSION

On appeal, Muldrew challenges only the district court's imposition of the five-level repeat-offender enhancement.  *See*

U.S.S.G. § 4B1.5(b)(1).  That enhancement applies "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a *pattern of activity* involving prohibited sexual conduct."  *Id.* (emphasis added).

The guideline itself does not define "pattern of activity."  But the accompanying commentary provides that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with *a minor*."  U.S.S.G. § 4B1.5 cmt. n.4(B)(i) (emphasis added).  We relied on the singular noun form of "a minor" to conclude that "repeated prohibited sexual conduct with a single victim may qualify as a 'pattern of activity' for purposes of § 4B1.5(b)(1)."  *Fox*, 926 F.3d at 1279.  *Fox* rested its holding on the commentary rather than the text of § 4B1.5(b)(1) itself.  *See id.*; *see also United States v. Isaac*, 987 F.3d 980, 993–94 (11th Cir. 2021) (applying commentary to affirm § 4B1.5(b)(1) enhancement where the defendant stipulated to "two separate occasions of sexual abuse" involving the same minor).

But after *Fox*, we held, sitting en banc, that we defer to Guidelines commentary only when a Guideline is "genuinely ambiguous," after "exhaust[ing] all the 'traditional tools' of construction."  *United States v. Dupree*, 57 F.4th 1269, 1274–75 (11th Cir. 2023) (en banc) (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)).  We do so because Guidelines commentary "is akin to an agency's interpretation of its own legislative rules," so we apply the standard that *Kisor* clarified.  *Id.* (quoting *Stinson v. United States*, 508 U.S. 36, 45

(1993)). And under our prior-panel-precedent rule, *Fox* is no longer binding if *Kisor* and *Dupree* "overruled or undermined [it] to the point of abrogation." *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

Muldrew argues that *Kisor* and *Dupree* abrogated *Fox*, so *Fox* no longer controls application of the § 4B1.5(b)(1) enhancement. The Government disagrees, contending that *Dupree* did not "silently overrule" every decision in which we deferred to Guidelines commentary.

As it turns out, we don't need to resolve this question to decide this case. That's because Muldrew's conduct qualifies either way. That is, if *Fox* controls, its rule requires the conclusion that Muldrew's "repeated" sex-trafficking of Victim 1[2] qualifies as a "pattern of activity." *Fox*, 926 F.3d at 1279. And if *Fox* doesn't control, Muldrew's conduct qualifies as a "pattern of activity" under the guideline's plain meaning. So we assume without deciding that *Kisor* and *Dupree* undermined *Fox* to the point of abrogation. *See Archer*, 531 F.3d at 1352.[3]

---

[2] Muldrew's argument rises and falls on the fact that he sex-trafficked one individual. We note references in the record to "Victim 2," "Victim 3," and "Victim 4," for whom Muldrew apparently also served as a "pimp." Yet the district court disclaimed reliance on Muldrew's other alleged victims, finding the Government had not proven their allegations were "relevant conduct" for sentencing purposes. So the district court imposed the § 4B1.5(b)(1) enhancement based on Victim 1 alone, and we must review that application here.

[3] We recently relied on *Fox* for the proposition that the § 4B1.5(b)(1) "enhancement applies if the defendant engaged in prohibited sexual conduct on at least

If *Fox* no longer binds us, we return to first principles. "When interpreting the [G]uidelines, we apply the traditional rules of statutory construction." *United States v. Stines*, 34 F.4th 1315, 1318 (11th Cir. 2022) (citation and internal quotation marks omitted). And "in every statutory-interpretation case, we start with the text—and, if we find it clear, we end there as well." *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022) (citation and internal quotation marks omitted). Here, the text is clear.

We consult the plain meaning of "pattern" in 2001, the year § 4B1.5(b)(1) was adopted. *See* U.S.S.G. amend. 615 (Nov. 2001). And under any contemporaneous definition of "pattern," including those that the parties offer, Muldrew's conduct qualifies.

Muldrew and Victim 1 had a "consistent or characteristic arrangement." *See Pattern*, Webster's Encyclopedic Unabridged Dictionary of the English Language (2001). Muldrew would assist Victim 1 in advertising sex work online, rent motel rooms for her use, communicate with Victim 1 before and after each commercial sex transaction, and otherwise hold himself out as her "pimp." And Muldrew's "behavior" was "recognizably consistent." *See Pattern*, Black's Law Dictionary (7th ed. 1999). Even under Muldrew's

---

two separate occasions, regardless of whether the crimes were committed against the same victim or different victims." *United States v. Boone*, 97 F.4th 1331, 1340–41 (11th Cir. 2024) (citing *Fox*, 926 F.3d at 1280–81; and then citing *Isaac*, 987 F.3d at 994). But that statement was dictum, as we found that the defendant had invited any error by conceding in the district court that the enhancement applied. *Id.* at 1339–40. And we did not consider whether *Kisor* and *Dupree* abrogated *Fox*.

preferred definition, his conduct was "frequent or widespread"—it occurred daily for nearly two months, across at least four states, and enough times to generate more than $27,000 for Muldrew. *See Pattern*, Merriam-Webster's Collegiate Dictionary (10th ed. 2000). Indeed, as the district court found, Muldrew's conduct was "a pattern in the classic sense of the word, the continued use of a minor, a victim . . . over a period of time repeatedly in the same fashion." The guideline's plain text does not require that Muldrew sex-traffic multiple victims for it to apply. So even if Muldrew is right that we don't get to the commentary, the district court did not err in imposing the enhancement.

In so holding, we join the Sixth Circuit, which has a similar rule to our *Dupree* rule. *See United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021). The Sixth Circuit found that § 4B1.5(b)(1)'s application to repeated conduct involving one victim "follows from the plain terms of the Guideline itself." *United State v. Paauwe*, 968 F.3d 614, 615 (6th Cir. 2020).[4] Namely, it reasoned, "[t]he essence of a 'pattern of activity' is conduct that is both repeated and related." *Id.* at 617 (quoting U.S.S.G. § 4B1.5(b)(1)). To illustrate that proposition, it posited two hypothetical robbers. The first robber

---

[4] Other sister circuits have upheld application of the § 4B1.5(b)(1) enhancement to conduct involving one victim, but most of those decisions predate *Kisor* and rely on the commentary. *See, e.g., United States v. Phillips*, 431 F.3d 86, 90 n.5 (2d Cir. 2005); *United States v. Von Loh*, 417 F.3d 710, 711, 714 (7th Cir. 2005); *United States v. Pappas*, 715 F.3d 225, 229 (8th Cir. 2013); *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1217 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 467 (2022).

"rob[s] multiple banks over a course of time," while the second commits "multiple robberies of the same bank over time." *Id.* "The latter" course of conduct, the Sixth Circuit reasoned, "is just as much a pattern as the former." *Id.*

We agree. And here, Muldrew's repeated sex-trafficking of Victim 1 is "just as much a pattern," *see id.*, as if he trafficked multiple victims. The § 4B1.5(b)(1) enhancement contemplates that conduct, and the district court properly imposed it here.

As a final matter, we briefly address Muldrew's two remaining arguments. Both lack merit.

First, Muldrew relies on the Guidelines' statement of purpose with respect to repeat offenders—namely, that "a defendant with a record of *prior criminal behavior* is more culpable than a first offender and thus deserving of greater punishment." U.S.S.G. ch. 4, pt. A, introductory cmt. (emphasis added). But § 4B1.5 is in Part B, not Part A (where the statement of purpose that Muldrew invokes appears). So the excerpt Muldrew cites is of limited relevance to the § 4B1.5(b)(1) enhancement. And the general proposition that a defendant with a criminal record may be more blameworthy than a first-time offender does not mandate the specific reading of § 4B1.5(b)(1) that Muldrew advances. That's especially true because Muldrew is not a first-time criminal offender—though this is his first conviction for a sex offense—and he engaged in a pattern of sex-offender conduct on a more-than-daily basis for nearly two months, in four different states. Nor does an introductory provision eclipse the guideline's plain text. *Cf. Paauwe*, 968 F.3d

at 618 (reasoning that § 4B1.5's title heading, "Repeat and Dangerous Sex Offender Against Minors," did not require multiple victims, because courts "defer to the Guideline's text, rather than its heading" if the two conflict).

Second, Muldrew invokes the rule of lenity. But the rule of lenity "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute," or here, an ambiguous Guideline. *Shular v. United States*, 589 U.S. 154, 165 (2020) (citation and internal quotation marks omitted); *see also Barber v. Thomas*, 560 U.S. 474, 488 (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." (citations and internal quotation marks omitted)). Here, there is "no ambiguity for the rule of lenity to resolve." *Shular*, 589 U.S. at 165. Muldrew's lenity-related argument, then, falls flat.

In sum, we conclude that under the guideline's plain meaning, Muldrew engaged in a "pattern of activity" with Victim 1 that made application of the five-level repeat-offender enhancement proper. We affirm Muldrew's sentence.

**AFFIRMED.**